IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Pamela Delores Davis, | ) | |
| | ) | Civil Action No. 8:14-cv-3673-JDA |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge; and the Honorable J. Michelle Child's September 18, 2014, Order of reference.  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, the decision of the Commissioner is reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On May 3, 2011, Plaintiff protectively filed an application for DIB, alleging an onset of disability date of December 20, 2010.[1]  [R. 19.]  The claim was denied initially and on

---

[1]On May 3, 2011, Plaintiff also filed an application for SSI.  [R. 79–86.]  It appears that the Commissioner denied Plaintiff's claim. [R. 88.]  Plaintiff is not appealing from the denial of her SSI claim. [Doc. 1.]

reconsideration by the Social Security Administration ("the Administration").  [R. 71–78, 89.]  On January 19, 2012, Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on May 3, 2013, ALJ Frank D. Armstrong conducted a de novo hearing on Plaintiff's claims in Charlotte, North Carolina.  [R. 31–70.]

The ALJ issued a decision on June 21, 2013, finding Plaintiff not disabled. [R. 19–26.]  At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since December 20, 2010, the alleged onset date, and Plaintiff met the insured status requirements of the Social Security Act ("the Act") through December 31, 2015. [R. 21, Findings 1&2.]

At Step 2, the ALJ determined Plaintiff had the following severe impairments: obesity, hypertension, arthritis, lymphedema, and edema.  [R. 21–22, Finding 3.]  The ALJ found that Plaintiff had a history of hypertension, chronic lymphedema and edema in her lower extremities, and arthritis in her bilateral knees and right foot, as well as some crepitus in her right knee.  [R. 21–22.]  The ALJ noted that Plaintiff had been prescribed Lisinopril and Hydrochlorothiazide for her hypertension, a "lymphpump" and supportive stockings for her lymphedema, and Motrin for her arthritis.  [R. 22.]   Additionally, the ALJ noted that, while Plaintiff did not allege depression in her application for disability and did not testify to any limitations associated with depression, the record reflects that she had been prescribed Sertraline by her primary care physician for symptoms related to depression; thus, the ALJ found Plaintiff's depression was a non-severe impairment.  [*Id*.]

At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 22, Finding 4.]  The ALJ did not specify which

2

listings he considered[2] but noted that he considered Plaintiff's obesity when making this finding. [*Id.*]

Before addressing Step 4, the ALJ found Plaintiff's residual functional capacity ("RFC") to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she can sit for two hours at a time for a total of six hours during an eight-hour workday; she can stand for one hour at a time for a total of five hours per workday; she can walk for one hour at a time for a total of five hours per workday; she can occasionally balance, climb ramps and stairs, crouch, kneel, and crawl; she can frequently stoop; and she can never climb ladders, ropes, or scaffolds.

[R. 22, Finding 5.]  At Step 4, the ALJ found that Plaintiff was capable of performing her past relevant work as a tax preparer (sedentary in exertion) as it was actually and generally performed.  [R. 25, Finding 6.]  On this basis, the ALJ determined that Plaintiff had not been under a disability as defined by the Act from December 20, 2010, through the date of the decision, June 21, 2013.  [R. 26, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision, and the Council denied the request for review on July 30, 2014. [R. 1–6.]  Plaintiff filed this action for judicial review on September 17, 2014.  [Doc. 1.]

---

[2]On remand, the ALJ should specify which Listings he considered to aid the Court in review.  Here, the decision fails to identify any listing, to explain the standard to be applied, and to compare claimant's symptoms to the requirements of the listing.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (remanding in part because it was "simply impossible to tell whether there was substantial evidence to support the determination" when the ALJ's decision failed to identify the relevant listed impairment and failed to compare each of the listed criteria to the evidence of the plaintiff's symptoms).

## THE PARTIES' POSITIONS

Plaintiff contends that the Commissioner's decision should be reversed and benefits awarded because the Commissioner committed legal errors and substantial evidence does not support the decision. [Doc. 17.] Specifically, Plaintiff alleges the RFC determination was error because (1) the evidence in the record showed that Plaintiff could not have performed any job on a sustained basis for eight hours a day, five days per week [*id*. at 12–13]; (2) the ALJ did not sufficiently consider treating physician Dr. Robin Shealy's ("Dr. Shealy") several opinions about Plaintiff's physical limitations in accordance with Social Security regulations and rules [*id*. at 13–18]; and (3) the ALJ failed to sufficiently consider Plaintiff's obesity in the RFC determination [*id*.18–19]. Plaintiff contends the ALJ failed to make specific findings and fully develop the record at Step 4 regarding the physical and mental demands of a tax preparer [*id*. at 19–20]; and the ALJ, at Step 5, gave the vocational expert ("VE") incomplete and inaccurate hypothetical questions thus making the VE's responses defective [*id*. at 21].

The Commissioner, on the other hand, contends that its final decision is supported by substantial evidence and free of harmful legal error. [Doc. 19.] Specifically, the Commissioner contends the ALJ's RFC determination was correct, and he considered Plaintiff's obesity among other impairments and properly found she could perform her sedentary past relevant work as tax preparer. [*Id*. at 11–14.] The Commissioner also contends the treating physician opinions were properly weighed. [*Id*. at 14–16.]

4

**STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment

5

for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual

functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

7

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.     The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. &*

9

*Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* § 404.1521.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the

[Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

11

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 404.1569a(c)(1).

exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270

F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a

claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree,

alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...

16

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

17

determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Analysis/Weighing of Medical Opinions**

Plaintiff argues the ALJ's RFC is not supported by substantial evidence for numerous reasons, one reason being that the ALJ failed to sufficiently consider and explain the rejection of treating physician Dr. Shealy's several opinions about Plaintiff's physical limitations in accordance with Social Security regulations and rules. Plaintiff argues the RFC determination is not consistent with medical and other evidence and that the Commissioner's decision should be reversed. The Court agrees with Plaintiff.

### *Dr. Shealy's Treatment Notes and Opinion*

Dr. Shealy admitted and treated Plaintiff at the McLeod Medical Center in Dillon, South Carolina, for lymphedema and cellulitis in her right lower extremity on July 1, 2008. [R. 356–57, 369.] After a course of IV antibiotics, elevation, and compression, Dr. Shealy discharged Plaintiff on July 5, 2008, stating that she must keep her leg elevated at home and use the lymph pump machine. [R. 358.] The discharge summary indicated that Plaintiff's lymph pump had been quite helpful with the edema, and she continued with significant edema of the medical aspect of the leg. [*Id*.] On examination July 1, 2008, Dr.

Shealy noted no joint pain, no back pain, but with right leg pain swelling and fever.  [R. 360.]  Dr. Shealy noted Plaintiff had lymphedema, obesity, anemia, hypertension, mitral valve prolapse, and cellulitis.  [R. 361.]  An ultrasound ruled out deep venous thrombosis. [R. 358.]

Dr. Shealy saw Plaintiff on November 3, 2010, for her complaints of a vaginal infection.  [R. 246–49.]  Dr. Shealy renewed Lisinopril/HCTZ for control of hypertension, refilled a prescription for compression stockings for lymphedema, prescribed Flagyl for a urinary tract infection, Diflucan for vaginitis, and refilled Motrin 800 mg tablets. [*Id*.]  Dr. Shealy noted Plaintiff's past history of right subtalar ankle fusion, lymphedema, MVP, hypertension, anemia.  [*Id*.]  Plaintiff had no joint or back pain and no loss of strength. [*Id*.] On December 30, 2010, Plaintiff saw Dr. Shealy because of bilateral knee and leg pain. [R. 243–45.]  Plaintiff told Dr. Shealy that she had been promoted to general manager at work three months earlier but had been under a lot of stress. [*Id*.]  On examination, Dr. Shealy observed that Plaintiff had no loss of strength or back pain, but that she had joint pain right and left knee, chronic lymphedema, and hypertension.  [*Id*.]  Dr. Shealy advised Plaintiff to use the pump for the lymphedema, continued Sertraline (Zoloft) for depression, and prescribed Flagyl and Diflucan. [*Id*.]  On January 24, 2011, Plaintiff saw Dr. Shealy for bloating and nausea that she thought was related to medication that she was taking for her menses.  [R. 240–42.]  Plaintiff also complained of right knee pain, right leg pain and hypertension; she indicated she had been using the lymph pump.  [*Id*.]  Dr. Shealy noted that Plaintiff had been fired from her job and was looking for a job.  [*Id*.]  Dr. Shealy noted

chronic lymphedema was present and instructed Plaintiff to continue Sertraline and to start Omeprazole (Prozac). [*Id*.]

Dr. Shealy saw Plaintiff again on March 7, 2013, and noted that Plaintiff had not taken her blood pressure medication in the last few days after being discharged from the ER on March 2, 2013.  [R. 467–69.]  Plaintiff's blood pressure was 144/100, weight was 235.8, and her extremities were enlarged.  [*Id*.]  Plaintiff had joint pain in hips, shoulders, left ankle, knees, but no back pain.  [*Id*.]  Plaintiff returned to Dr. Shealy on March 21, 2013, for back pain, nasal drainage, coughing, sneezing.  [R. 472–73.]  On examination, Dr. Shealy noted lymphedema was present and refilled Lisinopril/Hctz medication, refilled compression stockings full panty hose, started Flexeril and Lorcet for back pain, and Nexium for reflux. [*Id*.]

On April 23, 2013, Dr. Shealy wrote a note "To whom it May Concern," stating that Plaintiff had "a condition which prohibits her from actively seeking employment."  [R. 475.] On April 26, 2013, Dr. Shealy completed a form entitled "*Medical assessment of ability to do work-related activities*" pertaining to Plaintiff.  [R. 477–79.]  Dr. Shealy indicated that Plaintiff could lift less than ten pounds on an occasional basis due to back pain, knee pain, and severe lymphedema which limited her ability to be up on her feet. [*Id*.] Dr. Shealy indicated Plaintiff could stand and walk in combination one hour in a 8 hour work day, with interruption, due to back pain, knee pain, severe lymphedema, ankle and foot pain, and obesity.  [*Id*.]  Also, Plaintiff could sit in a chair without arms feet on the floor for two hours in a 8-hour work day, with interruption, due to "she gets worsening edema when sitting." [*Id*.]  During a 8-hour work day, Plaintiff could never climb, kneel, crouch, bend, stoop,

20

crawl, and occasionally could balance due to immobilizing boot in right lower extremity. [*Id.*]  Plaintiff's ability to push and pull would be affected due to back pain exacerbated by movement of upper torso.  [*Id.*]  Dr. Shealy noted Plaintiff had osteoarthritis in the knee and lumbar spine as confirmed by X-ray.  [*Id.*]  Dr. Shealy concluded that Plaintiff "has arthritis which causes knee and back pain; she is particularly affected by the limitations of the lymphdema—walking, sitting, and standing—worsens this problem." [*Id.*]

On April 30, 2013, Plaintiff had a radiology exam on the lumbar spine that showed spondylosis with mild disc space narrowing in the upper and mid lumbar spine; the results were sent to Dr. Shealy.  [R. 496.]  On the same date, Plaintiff had a radiology exam on the left knee, which was compared to the results of her May 2009 exam, that showed degenerative changes without significant change; the results were sent to Dr. Shealy.  [R. 497.]  On June 5, 2013, Plaintiff had a radiology exam on the right knee that showed DJD (degenerative joint disease) without definite effusion as compared to the results of her May 2009 exam; the results were, likewise, sent to Dr. Shealy.  [R. 495.]

On September 12, 2013, *after the ALJ's June 21, 2013, decision,* Dr. Shealy completed a form directed to Plaintiff's ability to do work-related physical activities.[6]  [R. 505–10.]  Dr. Shealy's opinion was the following: Plaintiff could lift and carry up to 10 pounds occasionally and never more than 10 pounds in a work day; Plaintiff could sit 2 hours during a full work day but may not tolerate the entire 2 hours without interruption; Plaintiff could stand 1 hour in a full work day but may not tolerate the entire hour without

---

[6]The Appeals Council considered additional evidence listed on the Order of Appeals Council dated July 30, 2014, which included among other items a medical source statement from Robin L. Shealy, MD, dated September 12, 2013. [R. 1–6.]

interruption; Plaintiff could walk for 5 minutes but may not tolerate the entire time without interruption. [*Id*.]  These limitations were because Plaintiff used a lymph pump several hours throughout the day and night to control edema. [*Id*.]  Dr. Shealy indicated Plaintiff needed a cane to ambulate and it was medically necessary, and that Plaintiff could walk without a cane only for short distances in the house.  [*Id*.]  Plaintiff could carry small objects in her free hand. [*Id*.]  Dr. Shealy indicated that Plaintiff's walking limitations were based on degenerative joint disease in knees and lumbar spine. [*Id*.]

With regard to Plaintiff's ability to use her hands, Dr. Shealy opined that Plaintiff could never reach overhead with either hand; she could reach in other directions, handle, finger, and feel with either hand occasionally; and she could never push or pull.  [*Id*.]  These limitations were due to elbow and shoulder pain.  [*Id*.]  With regard to Plaintiff's ability to use her feet, Dr. Shealy indicated Plaintiff could never use foot controls with either foot due because her "severe lymphedema causes clumsiness and difficulty" with "movement of lower extremities." [*Id*.]  Additionally, Dr. Shealy opined Plaintiff could never climb stairs and ramps; climb ladders or scaffolds; balance, stoop, kneel, crouch, crawl; never tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicles, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme heat or cold. [*Id*.]

Dr. Shealy opined Plaintiff could not do activities like shopping, travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, and climb a few steps at a reasonable pace with the use of a single hand rail. [*Id*.]  Dr. Shealy indicated Plaintiff could ambulate with one cane,

22

could prepare a simple meal and feed herself, could care for her personal hygiene, and could sort, handle, and use paper/files. [*Id*.] Dr. Shealy explained Plaintiff had cellulitis in 2004 and recurrent episodes which were worsened by work; and that Plaintiff had exhausted all forms of aid to help with lymphedema and is totally disabled from her limitations. [*Id*.] Dr. Shealy stated that Plaintiff's limitations will last for 12 consecutive months. [*Id*.]

### ALJ's Weighing of Dr. Shealy's Medical Opinions

With regard to Dr. Shealy's medical opinion, the ALJ explained the weight assigned to the opinion as follows:

> Likewise, the undersigned has given little weight to the opinion of the claimant's primary care physician, Dr. Robin Shealy. Specifically, in a medical assessment of the claimant's ability to do work-related activities dated April 26, 2013, Dr. Shealy opined that the claimant could lift less than l0 pounds occasionally, stand for a total of one hour in an eight-hour workday, and sit for a total of two hours in an eight-hour workday. Dr. Shealy further opined that the claimant could never climb, kneel, crouch, bend, stoop, or crawl and that she could occasionally balance. (Exhibit 17F2-4). In a separate note from April 23, 2013, Dr. Shealy indicated that the claimant "has a condition which prohibits her from actively seeking employment" (Exhibit 16F2). However, despite being the claimant's "primary care physician," the record indicates that the claimant has only received sporadic treatment from Dr. Shealy. Specifically, she was seen in December 2010 for bilateral knee and leg pain and in January 2011 for right knee and leg pain. (Exhibits 1F2,5). However, she was not seen again by Dr. Shealy until March 7, 2013, at which point she followed-up for an unrelated matter. She was seen once more on March 21, 2013 for allergies and low back pain, yet those treatment notes do not contain any specific physical findings related to the claimant's pain. (Exhibit 15F7). Essentially, Dr. Shealy based her opinion on only three visits with the claimant in over two years. As discussed above, the ultimate issue of disability is reserved for the commissioner. SSR 96-5p. In this case, the claimant's self-reported activities of daily living and

> the objective medical evidence available in the record do not
> support Dr. Shealy's opinion.

[R. 25.]

The ALJ also explained he gave little weight to Dr. Shealy's medical opinion based on the other medical evidence in the record and Plaintiff's testimony about her activities of daily living.  [R. 22–24.]

### Discussion

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule....

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted).  The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  *See id.*  Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i .e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC....

*Id*. at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id*. at 34,477. SSR 96–8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted ." *Id*. at 34,478. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

In considering medical source opinions, such as treating physicians, the ALJ is obligated to evaluate and weigh these medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing

20 C.F.R. § 404.1527).  Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (*quoting Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. § 404.1527(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  Additionally, Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions.  In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work.  Because these are administrative findings that may

26

> determine whether an individual is disabled, they are reserved
> to the Commissioner. Such opinions on these issues must not
> be disregarded. However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source

of an opinion on issues reserved to the Commissioner," such as an opinion that the

claimant is disabled, the claimant's impairment or impairments meets or equals a listing,

or the claimant has a certain residual functional capacity).

Under the Treating Physician Rule, the ALJ is to honor as controlling a treating

physician's opinion so long as it is "not inconsistent" with other substantial evidence. *See,*

*e.g., Dominguese v. Massanari*, 172 F. Supp. 2d 1087, 1100–01 (E.D.Wis. 2001) (noting

the "'not inconsistent' standard presumes the [treating physician's] opinion's prominence

and requires the ALJ to search the record for inconsistent evidence in order to give the

treating source's opinion less than controlling weight[,]" as opposed to an ALJ's only giving

a treating source's opinion controlling weight if "the record supports it."); *see also* 20 C.F.R.

§ 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature

and severity of your impairment(s) is well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence

in your case record, we will give it controlling weight."). And, the Fourth Circuit Court of

Appeals has reversed and remanded a case where the ALJ substituted his opinion for the

uncontradicted opinion of an examining physician. *See Wilson v. Heckler*, 743 F.2d 218,

221 (4th Cir. 1984) (finding that the ALJ substituted expertise he did not possess in the

field of orthopedic medicine for the opinion of an examining physician that was supported by the findings of a treating physician).

In undertaking review of the ALJ's treatment of a Plaintiff's treating sources, this Court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. Upon review, the Court finds that the ALJ failed to properly consider Dr. Shealy's opinion in accordance with the Treating Physician Rule. The misapplication of the Treating Physician Rule in this case mandates reversal of the Commissioner's decision and remand for a proper evaluation of the medical opinions contained in the record.

In this case, the ALJ discounted Dr. Shealy's April 26, 2013, medical opinion of limitations on Plaintiff's physical abilities because Plaintiff had only received "sporadic treatment" from Dr. Shealy.[7] The ALJ stated "[e]ssentially, Dr. Shealy based her opinion on only three visits with the claimant in over two years." First, the Court notes that Plaintiff sought treatment from Dr. Shealy in Dillon, South Carolina, at least five times in the office: November 3, 2010, December 30, 2010, January 24, 2011, March 7, 2013, and March 21, 2013. In each of the visits, Dr. Shealy treated Plaintiff's lymphedema in her legs even if the doctor also treated other conditions complained of by Plaintiff. Also, on July 1, 2008,

---

[7]Although Plaintiff also argues that the Commissioner should have given Dr. Shealy's September 2013 opinion great weight [Doc. 17 at 17], Plaintiff did not specifically argue that the Appeals Council erred by refusing to grant review to sufficiently consider the September 12, 2013, opinion. While this Court has *not* focused its discussion on Dr. Shealy's September 12, 2013, opinion because the ALJ did not have it before him, the Court notes that Plaintiff's DLI was December 31, 2015. On remand, the ALJ should give Dr. Shealy's September 12, 2013, opinion sufficient consideration and discussion.

Dr. Shealy treated Plaintiff in the hospital for several days for her lymphedema.  There is also evidence in the record that after March 21, 2013, Dr. Shealy apparently ordered radiology reports on the left and right knees and lumbar spine, suggesting that Dr. Shealy was in contact with Plaintiff about these tests.  Accordingly, substantial evidence does not support the ALJ's statement that Plaintiff only sporadically received treatment from Dr. Shealy, and it appears the ALJ ignored several of the visits without sufficiently explaining the reason and without acknowledging that lymphedema was treated and/or observed during those visits.

Additionally, the ALJ did not explain in the decision that between the visits to Dr. Shealy on January 24, 2011, and March 7, 2013, Plaintiff apparently had moved away from Dillon, South Carolina.  For example, it appears that Plaintiff sought treatment from Rosamuel Dawkins, M.D. ("Dr. Dawkins") in Charlotte, North Carolina, on at least September 12, 2011, November 7, 2011, March 13, 2012, April 18, 2012, and May 21, 2012.  On February 2, 2012, Dr. Dawkins wrote a note stating simply that Plaintiff had a "medical problem that prevents her from duties requiring standing." [R. 307.]   On March 6, 2012, Dr. Dawkins wrote another note that Plaintiff was "permanently disabled" due to "a medical condition that will permanently impair her ability to ambulate." [R. 306.]   The ALJ did not consider Plaintiff's apparent move out-of-state as a possible reason for Plaintiff's gap in treatment from Dr. Shealy.

Additionally, Plaintiff was also evaluated by the North Carolina Department of Health and Human Services, Disability Determination Services, on July 16, 2011. [R. 252–55.] On evaluation, Dr. Vincent Hillman ("Dr. Hillman") noted Plaintiff had a history of arthritis which affected her right foot/ankle and she has a subtalar fusion secondary to fracture;

Plaintiff has a history of knee problems, has had chronic lymphedema and back pain; and has a history of arthritis. [R. 255.] Dr. Hillman concluded that Plaintiff currently has chronic lymphedema of the lower extremities; and has some ambulatory issues and would have difficulty standing and ambulating for long periods of time. [*Id.*]

Also, in June 2012, Plaintiff was hospitalized at the Carolinas HealthCare System in Charlotte, North Carolina, due to recurrent cellulitis with worsening lymphedema in her bilateral lower extremities (worse on the right) with increasing pain and redness. [R. 310.] In July 2012, Plaintiff was hospitalized in the Jersey City Medical Center Emergency Department due to bilateral leg swelling. [R. 325, 340.] Plaintiff was diagnosed and treated for chronic leg edema and musculoskeletal chest pain. [R. 342.]

It is widely held that ALJs are not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision. *See, e.g., Phillips v. Barnhart*, 91 F. App'x 775, 780 n. 7 (3d Cir. 2004); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (finding that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection" insufficient to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole). In light of the record evidence of treatment sought by Plaintiff for the same condition outside of the State of South Carolina, and findings by other physicians which appear to be consistent with Dr. Shealy's findings, it is unclear from a reading of the decision how the ALJ dismissed Dr. Shealy's opinion in light of Plaintiff's rather consistent

complaints.  The Court is unable to conclude that the ALJ's broad rejection of Plaintiff's complaints was based on his consideration of Plaintiff's medical condition as a whole.

Moreover, during the RFC determination, the ALJ stated that, "[t]here is very little objective medical evidence of record to support the claimant's alleged physical limitations," however, substantial evidence does not support that statement.  The ALJ appeared to focus on Plaintiff's activities of daily living, the fact that she had worked part-time after her alleged onset date, and the fact that she received unemployment benefits from North Carolina to support his RFC determination.  However, as stated above, it appears the ALJ either ignored or failed to explain his consideration of much of the medical evidence which all appears to support Dr. Shealy's opinion.  As noted above, Plaintiff submitted many treating physician records to show: her lymphedema of the legs caused her painful swelling for which she needed to use a lymph pump, take pain medicines, and elevate her legs; she had hypertension, obesity, and arthritis; and, the lymphedema and cellulitis caused her to seek hospital emergency treatment on several occasions.  Even Dr. Hillman, who saw Plaintiff once and the ALJ relied on his record, stated that it would be difficult for Plaintiff to stand and ambulate for lengthy periods of time.  The ALJ did not discuss his consideration of this statement.

The ALJ noted that the records did not indicate that Plaintiff had any corrective surgeries, received steroid or trigger point injections on a regular basis for pain, or participated in physical or aqua therapy.  The ALJ explained that given she was on Medicaid, her limited treatment suggested her pain was not disabling.  However, Plaintiff's doctors recommended that she use a lymph pump and elevate her leg, which she did.  And, the evidence indicated that she needed to use the pump on her legs during the work

31

day and night.  There is no evidence that her doctors offered steroid or trigger point injections or corrective surgeries.  Thus, the ALJ's basis for discounting Plaintiff's complaints for her failure to seek such treatment amounts to his substituting his medical judgment over that of the treating physician.

This Court is mindful that its role is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. This Court is not re-weighing conflicting evidence; instead, it notes that the Commissioner either ignored or did not sufficiently consider much of the medical evidence that indicated Plaintiff's physical limitations, perhaps because the ALJ focused more on Plaintiff's unsuccessful work attempts and receipt of some unemployment benefits.  Upon remand, the Commissioner should sufficiently discuss and explain his consideration of all of the medical evidence in the record.

**Plaintiff's Remaining Arguments**

Plaintiff made additional arguments, but this Court declines to address them.  Based on the above reasons, there is a sufficient basis to remand the case to the Commissioner. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

<u>**CONCLUSION**</u>

Wherefore, based upon the foregoing, it is ordered that the Commissioner's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 8, 2016
Greenville, South Carolina